UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

2:10-CV-1626 JCM (PAL)

PHH MORTGAGE SERVICES,

    Plaintiff,

v.

WESTERN THRIFT & LOAN, et al.,

    Defendants.
_____

WESTERN THRIFT & LOAN,

    Third-Party Plaintiff,

v.

GERALD SANDLER, et al.,

    Third-Party Defendants.

**ORDER**

Presently before the court is third party defendant Gerald Sandler's motion to dismiss a third party complaint pursuant to Federal Rule Civil Procedure 12(b)(6) dated September 29, 2010 (doc #4). Also before the court is third party plaintiff Western Thrift & Loan's ("Western") opposition dated October 15, 2010 (doc #7), and Mr. Sandler's reply dated October 25, 2010 (doc #9).

On October 7, 2005, and again on July 10, 2007, Western entered into service agreements with Homeowners Lending Corporation ("Homeowners") to set up a multi-state business of

**James C. Mahan**
**U.S. District Judge**

1  originating, processing, underwriting and selling mortgage loans. Mr. Sandler is the president and
2  a shareholder of Homeowners.[1] Mr. Sandler signed the 2005 and 2007 service agreements as the
3  president of Homeowners, and then again "Individually" (*see* declaration of Ismail Amin, Esq. doc.
4  #4-1).

5  In connection with the service agreements, Homeowners submitted several different loan
6  applications to Western. Western then sold the loans to plaintiff PHH Mortgage Services ("PHH"),
7  who was in the business of funding and selling loans to other lenders on the secondary mortgage
8  market. PHH subsequently discovered certain misrepresentations on the loan applications and
9  brought suit against Western who, in turn, filed its third party complaint against, among others, Mr.
10 Sandler (see doc. #1, Exhibit 1). In Western's third party complaint, it alleges that Mr. Sandler not
11 only entered into the service agreements on behalf of Western, but also personally guaranteed the
12 terms of the contract (*id.*).

13 Conversely, Mr. Sandler contends that he only executed the service agreement as a corporate
14 officer and therefore personal liability can only be established by piercing the corporate veil. Because
15 Western has not asserted an alter ego claim, Mr. Sandler argues that Western cannot establish
16 personal liability. Additionally, Mr. Sandler argues that the plain language of the service agreement
17 illustrates that it was formed between corporate entities only and Western's only available remedy
18 is a reserve fund mentioned in the agreements. In aggregate, Mr. Sandler asserts that Western cannot
19 establish he is personally liable under the service agreements and the court should dismiss the
20 allegations against him pursuant to Federal Rule Civil Procedure 12(b)(6).

21 **A.   Motion to Dismiss Standard**

22 A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can
23 be granted." FED. R. CIV. P. 12(b)(6). A dismissal is appropriate under Rule 12(b)(6) only when "it
24 appears beyond a doubt that [the] plaintiff can prove no set of facts in support of his claim which

---

[1] Homeowners is a California corporation that previously conducted business in Nevada. Homeowners is not a party to this action because it filed for bankruptcy prior to Western bringing its third party claims.

**James C. Mahan**
**U.S. District Judge**

- 2 -

1 would entitle him to relief." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).
2 Additionally, a complaint must be dismissed if it does not plead "enough facts to state a claim that
3 relief is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**B. Mr. Sandler's Personal Liability Under the Service Agreements**

At issue is whether Mr. Sandler plausibly owes a *personal* obligation—equitable, contractual, or implied—to indemnify Western for its claimed losses under the service agreements. In Nevada, the party seeking to expand personal liability to an officer of a corporation for a corporate debt must show that "[1] the officer intended to be personally bound, and [2] the creditor was looking to the officer as the guarantor of the debt." *Trident Constr. Corp. v. W. Elec., Inc.*, 105 Nev. 423, 428 (1998). Based on the undisputed fact that Mr. Sandler signed the service agreements in both his corporate capacity *and* individually, it is indeed plausible that both elements are satisfied. Accordingly, this court denies Mr. Sandler's motion to dismiss Western's third party complaint against him.

　　1.　Mr. Sandler's Intent to be Bound by Signing "Individually"

Controlling authority on this issue is nebulous; however, other circuits have held that the most obvious indicator of intent is the "form of the signature." *See Israel v. Chabra*, 537 F.3d 86, 97 (2d Cir. 2008). An officer who signs his or her name and adds, not only a corporate title, but also the word "individually," clearly shows an intention to be bound individually. 18B AM. JUR. 2D *Corporations* § 1594 (West 2010). And where a person signs both in his corporate capacity and in his individual capacity, the person may be held personally liable. *See* ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 2.10, at 174 (Joseph M. Perillo ed., rev. ed. 1993) ("One who signs a writing which purports to be a contract does an act that is strong evidence of one's intention to make oneself a party thereto bound as a promisor and entitled as a promisee."); *see also Kuehl v. Freeman Bros. Agency*, 521 N.W.2d 714, 720 (Iowa 1994) (finding personal liability where defendant "signed the agreement twice—once as the corporate president and once in his individual capacity."); *Freidus v. Sardelli*, 192 A.D.2d 578, 580 (N.Y. 1993) (finding personal liability where defendant signed a joint venture agreement both in her corporate capacity and individually); *Hartley v. Hollman*, 376

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  P.2d 1005, 1006 (Alaska 1962) (same).

2  The Ninth Circuit case that most resembles the facts herein is *FDIC v. Woodside Constr.,
3  Inc.*, 979 F.2d 172 (9th Cir.1992). In *Woodside*, the defendant (Galt) signed a deed of trust note
4  twice. *Id.* at 174. Galt's signature appeared below the name of the corporation, on the line
5  designating his representative capacity as president, and it also bore Galt's signature above the name
6  of the corporation with no representative capacity designated. *Id.* Galt claimed that both his
7  signatures were in a representative capacity and that he did not sign individually as an endorser;
8  however, the Ninth Circuit concluded that the manner in which Galt signed the promissory note
9  bound him as an endorser in his individual capacity. *Id.* at 175.

10  Conversely, Mr. Sandler cites *Trident Constr. Corp. v. W. Elec., Inc.*, 105 Nev. 423, 776 P.2d
11  1239 (Nev. 1998). In *Trident*, a corporate officer signed a settlement agreement without indicating
12  his representative capacity. *Id.* at 425, 776 P.2d at 1241. The *Trident* court held that the officer's
13  signature, without a statement acknowledging he was acting for the corporation, was insufficient to
14  support a finding of a personal guarantee. *Id.* at 428, 776 P.2d at 1243.

15  Unlike the situation in *Trident*, Mr. Sandler did not fail to include his corporate capacity,
16  title, or office when executing the service agreements. Instead, his corporate capacity was identified
17  and included. Similar to the defendant in *Woodside*, Mr. Sandler signed twice. Moreover, the second
18  of Mr. Sandler's signatures was clearly labeled "Individually," leaving little uncertainty that Mr.
19  Sandler intended to engage in the service agreements in a capacity other than that of Homeowners'
20  agent.

21      2.    <u>Western's Intent to Bind Mr. Sandler</u>

22  "[W]here individual responsibility is demanded, the nearly universal practice is that the
23  officer signs twice—once as an officer and again as an individual." *Israel v. Chabra*, 537 F.3d 86,
24  97 (2d Cir. 2008) (*quoting Salzman Sign Co. v. Beck*, 176 N.E.2d 74, 76 (N.Y. 1961)).

25  Mr. Sandler has not asserted any plausible justification why he would have signed the service
26  agreement individually if not to communicate to Western that he intended to personally guarantee
27  the service agreement. Therefore, at this pre trial stage in the proceedings, the undisputed fact of Mr.

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  Sandler's dual signature satisfies the pleading requirements of *Twombly* and overcomes Mr.
2  Sandler's motion to dismiss Wester's third party complaint pursuant to Federal Rule Civil Procedure
3  12(b)(6).
4      Accordingly,
5      IT IS HEREBY ORDERED, ADJUDGED, AND DECREED third party defendant Gerald
6  Sandler's motion to dismiss third party plaintiff Western's complaint (doc. #4) be, and the same
7  hereby is, DENIED.
8      DATED March 4, 2011.

                                                    */s/ James C. Mahan*
                                    **UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 5 -